In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2324

ARMADA (SINGAPORE) PTE LIMITED,

*Plaintiff-Appellant,*

*v.*

AMCOL INTERNATIONAL CORPORATION,
et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-03455 — **Elaine E. Bucklo**, *Judge.*

ARGUED JANUARY 19, 2018 — DECIDED MARCH 26, 2018

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge*. The plaintiff in this case is a Singaporean shipping company. It entered into shipping contracts with an Indian mining company, but the Indian company breached those contracts. Now, the plaintiff believes that American businesses engaged in racketeering activity to divest the Indian company of assets so as to thwart the plaintiff's attempts to recover damages for the breached con-

tracts. Seeking redress for this alleged wrong, the plaintiff brought this lawsuit, claiming violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). While the plaintiff's case was pending in the district court, the Supreme Court decided *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016). Addressing RICO's extraterritorial effect, the Supreme Court held that "[a] private RICO plaintiff … must allege and prove a *domestic* injury to its business or property." *Id.* at 2106. After this decision came down, the American defendants moved for judgment on the pleadings, maintaining the plaintiff had not pleaded a domestic injury. The district court agreed and entered judgment on the RICO claims against the plaintiff, who now appeals. Because we also conclude the plaintiff has not pleaded a domestic injury, we affirm.

## I.

As this case comes to us on appeal from judgment on the pleadings, we present the facts as stated in the plaintiff's amended complaint. *See Matrix IV, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011). Amcol International Corporation, an Illinois corporation with its principal place of business in Illinois, owns 100% of American Colloid Company and Volclay International Corporation (n/k/a Volclay International LLC). Both companies are also organized under the laws of Illinois with their principal places of business in Illinois. Given the extent of the three entities' affiliation, we will refer to them collectively as "Amcol." Amcol was the largest shareholder of Ashapura Minechem Limited ("Ashapura"), a foreign corporation with its principal place of business in Mumbai, India.

Originally, Ashapura focused its business on the production and marketing of the mineral bentonite. But in 2007 and early 2008, Ashapura expected to sell large quantities of the mineral bauxite in China. Needing to get that bauxite to China, in April 2008 Ashapura entered into two long-term contracts of affreightment with Armada (Singapore) PTE Limited ("Armada"), a foreign corporation with its principal place of business in the Republic of Singapore. Unfortunately, Ashapura encountered problems with its bauxite suppliers, so it defaulted under the contracts with Armada at the end of September 2008. Ashapura failed to pay Armada for the shipment Armada had already carried and did not provide any further cargoes.

Armada subsequently initiated two arbitration actions in London against Ashapura, one for each contract. The arbitrator found for Armada and awarded more than $70,000,000 in two awards on February 16, 2010. About a year and a half later, Armada had the arbitration awards recognized by the United States District Court for the Southern District of New York, which entered a judgment for Armada. Armada had the judgment registered with the United States District Court for the Northern District of Illinois the next year. In addition to this activity, Armada sought to collect on its awards by filing maritime attachment proceedings in New York and Illinois, naming Amcol as garnishee. Through these actions, Armada was able to garnish and recover approximately $687,000 worth of debts that Amcol owed to Ashapura.

But Armada thinks Amcol obstructed its attempts to recover from Ashapura, and this brings us to the crux of the matter currently before the court. Armada alleges Amcol

used its influence as Ashapura's largest shareholder to en-gage in a number of schemes aimed at draining Ashapura of assets to thwart Armada's collection efforts. These plots ranged from routine collection avoidance—such as having Ashapura file for protection with the Board of Industrial and Financial Reconstruction in India and file a Chapter 15 bank-ruptcy petition in the United States—to more complicated methods—such as setting off debts owed by Ashapura affili-ates against debts Amcol owed to Ashapura.

In 2013, Armada filed this lawsuit against Amcol, Asha-pura, and five John Does. In July 2015, Armada filed an amended complaint setting out state-law claims for fraudu-lent transfer, wrongful dividend, and breach of fiduciary du-ties and a claim for maritime fraudulent transfer. Armada also made two claims pursuant to RICO's private right of action,[1] alleging Amcol engaged in racketeering activity and a racketeering conspiracy that harmed Armada's business or property.

While the case was pending, the Supreme Court decided *RJR Nabisco* and announced a domestic-injury requirement for civil RICO cases. Just over a month later, Amcol filed a motion for judgment on the pleadings. The district court en-tered judgment for Amcol on the state-law claims. The dis-trict court also entered judgment on the RICO claims, con-cluding that Armada's claimed injury—harm to its ability to collect on its judgment and other claims—was economic. Be-cause economic injuries are felt at a corporation's principal place of business, and Armada's principal place of business is in Singapore, Armada had not pleaded a "domestic inju-

---

[1] *See* 18 U.S.C. § 1964(c).

ry" as required by *RJR Nabisco*. However, the district court allowed the maritime fraudulent transfer claim to go forward, so it denied Amcol's motion to that extent. Armada now brings this interlocutory appeal, challenging only the district court's ruling concerning the RICO claims.

## II.

Our review of the grant of a motion for judgment on the pleadings is *de novo. St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The standard for entering judgment on the pleadings is the same as that for dismissing a complaint for failure to state a claim: "the complaint must state a claim that is plausible on its face." *Id.* (quoting *Vinson v. Vermilion Cty., Ill.*, 776 F.3d 924, 928 (7th Cir. 2015)). In this appeal, the sole issue is whether Armada has pleaded a "domestic injury."

18 U.S.C. § 1964(c), colloquially referred to as "civil RICO," empowers private parties to bring lawsuits against those engaged in racketeering activity when that activity has caused them harm. *See generally Rotella v. Wood*, 528 U.S. 549, 557 (2000) ("The object of civil RICO is … not merely to compensate victims but to turn them into prosecutors … dedicated to eliminating racketeering activity."). By its terms, § 1964(c) requires that the plaintiff have suffered an injury to "his business or property by reason of" the racketeering activity. 18 U.S.C. § 1964(c). In this case, Armada claims that it suffered an injury to its property, namely its judgment and other claims against Ashapura. Armada claims that Amcol, by means of racketeering activity, injured that property by divesting Ashapura of assets, thereby making the judgment and other claims against Ashapura uncollectable. A cause of action is recognized as a property right

that can suffer injury. *See Pitts v. Unarco Indus., Inc.*, 712 F.2d 276, 279 (7th Cir. 1983); *cf. Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 354 (3d Cir. 1986) (recognizing that an injury to a cause of action can be a "business injury" for RICO purposes). For Armada, so far so good.

But we do not ask only whether Armada has pleaded an injury. We also must determine, in light of *RJR Nabisco*, whether that injury is "domestic." Regrettably, the Supreme Court did not have occasion to elaborate on what it meant in *RJR Nabisco* by "domestic injury," as the plaintiffs in that case had specifically waived their claims for domestic injuries. *See* 136 S. Ct. at 2111. But the Court did provide some vague hints at what "domestic injury" might entail. For instance, it consistently referred to the location where an injury was *suffered*. *See, e.g., id.* at 2108 ("Nothing in § 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States."); *id.* at 2111 (directing the dismissal of the remaining claims because they "rest entirely on injury suffered abroad"). It also made a point of noting the domestic-injury requirement does not categorically bar foreigners from recovering under the statute's provisions. *See id.* at 2110 n.12.

Having announced the domestic-injury requirement, but having declined to define the term, the Court cautioned that "application of this rule in any given case will not always be self-evident, as disputes may arise as to whether a particular injury is 'foreign' or 'domestic.'" *Id.* at 2111. Unsurprisingly, that statement has proved prescient. Since *RJR Nabisco* came down, many district courts have done their best to craft a rule for determining which injuries are domestic and which

are foreign. *See, e.g.*, *Cevdet Aksüt Oğullari Koll. Sti v. Cavuso-glu*, 245 F. Supp. 3d 650, 657 (D.N.J. 2017) ("These cases exhibit a wide array of factual scenarios and justifiable reasoning, with no clear victor in the 'domestic injury' debate."). These cases have only now begun percolating up to the courts of appeals.

In October of last year, the Second Circuit became the first court of appeals to address the "domestic injury" issue. In *Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017), the plaintiff, a resident of Chile, alleged that his cousin had stolen millions of dollars from him through various schemes. *Id.* at 809. The district court in that case, applying similar reasoning to the district court in this case, concluded that all of the plaintiff's injuries were economic, that economic injuries are suffered at a person's residence, and thus the injuries were Chilean, not domestic. *Id.*

On appeal, the Second Circuit rejected such a one-dimensional approach, noting that RICO's requirement that injury must be to business or property means *all* RICO claims are by nature based on "economic" injury. *See id.* at 817. In its place, the Second Circuit adopted an approach that addresses each individual injury alleged. *Id.* at 818. The court considered the four injuries pleaded by the plaintiff: the theft of dividends paid by a foreign corporation, the funneling of money into a private investment fund in Chile, the theft of money from a New York bank account, and the theft of physical bearer shares from a safe-deposit box in New York. *Id.* at 811–13. Concerning the theft of the dividends and the funneling of money into the investment fund, the only connection to the United States was that those funds either passed through or were placed in bank accounts in the

United States at some point in the scheme. *Id.* at 818. The court concluded that such minimal, defendant-initiated contacts with the United States were not sufficient to make the resulting injuries to the plaintiff "domestic." *Id.* On the other hand, the court held that the alleged theft of the bearer shares and the theft of the money in the New York bank account were "domestic injuries." *Id.* at 820. What set these injuries apart was the presence of harm to tangible property that was located in the United States. *Id.* at 820–24. The court held that "where the injury is to tangible property, we conclude that, absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." *Id.* at 820–21. Because of the importance of the presence of *tangible* property to its conclusion, the court was quick to distinguish the situations in the case before it from those involving intangible harms. *See id.* at 823–24. For instance, concerning the theft of the bearer shares, the court pointed out the plaintiff was not alleging any harm to the *value* of those shares, but rather the harm caused by the defendant's theft of the physical shares themselves. *Id.* at 824.

Both Armada and Amcol tell us *Bascuñán* is a win for them. At oral argument, Armada maintained that its judgment and claims are tangible properties located in the United States. For its part, Amcol argued that there is no tangible property in this case, only "a bundle of litigation rights," and that the connections to the United States are too tenuous to make Armada's alleged injuries domestic. We agree with Amcol.

To begin with, the property Armada claims Amcol has harmed is not tangible. A "tangible asset" is one "that has a physical existence and is capable of being assigned a value." *Tangible asset*, Black's Law Dictionary (9th ed. 2009). As much as a judgment or a cause of action is a piece of property, it does not have a "physical existence." The property at issue here, then, is an "intangible asset," which is one that "can be amortized or converted to cash, such as patents, … or a right to something, such as services paid for in advance." *Intangible asset*, Black's Law Dictionary (9th ed. 2009); *see also Blodgett v. Silberman*, 277 U.S. 1, 12 (1928) (concluding that right to receive money was "a chose in action, and an intangible").

The Second Circuit's reasoning in *Bascuñán* focused on how to address situations involving tangible property. Here, we must determine where to locate an injury to intangible property. As we noted above, the Supreme Court directs us to focus on where the injury is *suffered*. To "suffer" is "[t]o experience or sustain … [an] injury." *Suffer*, Black's Law Dictionary (9th ed. 2009). It is well understood that a party experiences or sustains injuries to its intangible property at its residence, which for a corporation like Armada is its principal place of business. *See, e.g.*, *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 805 (7th Cir. 1997) ("The place of injury was clearly Saudi Arabia, where Kamel's business would suffer as a result of Hill-Rom's conduct."); *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 246 (6th Cir. 2009) (concluding "the economic injury suffered by [the plaintiff] … was clearly felt at its corporate headquarters"); *Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1, 19 (1st Cir. 1979) ("The place of injury is where plaintiff suffered the harm … at its place of business, Pennsylvania."). Here, Ar-

mada's principal place of business is in Singapore, so any harm to Armada's intangible bundle of litigation rights was suffered in Singapore. Thus, the injury is not domestic, and Armada has failed to plead a plausible claim under civil RICO.

### III.

A plaintiff advancing a civil RICO claim must allege a domestic injury. Armada has not done so. Therefore, the district court's entry of judgment on the pleadings on the RICO counts of Armada's amended complaint is AFFIRMED.