**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3285
_____

PETER HUMPHREY; YU YINGZENG; CHINAWHYS
COMPANY LTD,      Appellants

v.

GLAXOSMITHKLINE PLC; GLAXOSMITHKLINE LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil No. 2-16-cv-05924)
District Judge:  Honorable Nitza I. Quinones Alejandro
_____

Argued May 24, 2018

Before: McKEE, SHWARTZ and NYGAARD, <u>Circuit
Judges</u>

(Opinion filed:  September 26, 2018)

Philip M. Bowman, Esq.
Boies Schiller & Flexner
575 Lexington Avenue
7th Floor
New York, NY 10022

Joan D. Gallagher, Esq.
Gallagher & Turchi
1760 Market Street
Suite 1100
Philadelphia, PA 19103

James Hickey, Esq.
Gallagher Law
1600 Market Street
Suite 1320
Philadelphia, PA 19103

John T. Zach, Esq.          **(Argued)**
Boies Schiller & Flexner
575 Lexington Avenue
7th Floor
New York, NY 10022
                    Counsel for Appellants


Kurt W. Hansson, Esq.      **(Argued)**
Paul Hastings
200 Park Avenue
New York, NY 10166

Nathan P. Heller, Esq.
DLA Piper
1650 Market Street
One Liberty Place, 49th Floor
Philadelphia, PA 19103

Stephen B. Kinnaird, Esq.
Paul Hastings
875 15th Street, N.W.
Suite 1000
Washington, DC 20005

Jayne A. Risk, Esq.
DLA Piper
1650 Market Street
One Liberty Place, 49th Floor
Philadelphia, PA 19103

James B. Worthington, Esq.
Paul Hastings
200 Park Avenue
New York, NY 10166
                    Counsel for Appellees

---

OPINION

---

McKEE, Circuit Judge

Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, creates a private right of action for a plaintiff that "is injured in his [or her] business or property" as a result of conduct that is proscribed by the statute. In *RJR Nabisco, Inc. v. European Community*, the Supreme Court determined that, although a litigant may file a civil suit against parties for racketeering activity committed abroad, § 1964(c)'s private right of action is only available to a litigant that can "allege and prove a *domestic* injury to its business or property."[1]

In this case of first impression for this court, we must decide whether Plaintiffs pled sufficient facts to establish that they suffered a domestic injury under § 1964(c). For the reasons that follow, we will affirm the District Court's judgment that they have not.

**I.**
**A.    Factual Background**

Plaintiffs Peter Humphrey and Yu Yingzeng are co-founders of ChinaWhys, an investigations firm that assists foreign companies doing business in China with American anti-bribery regulations compliance. Although Plaintiffs resided in Beijing during the events alleged in their complaint, much of ChinaWhys' business was conducted with American companies.

Plaintiffs allege that Defendants, GlaxoSmithKline plc ("GSK PLC") and GlaxoSmithKline LLC ("GSK LLC"), engaged in widespread bribery in China in order to obtain improper commercial advantages and that they did so with the approval of Mark Reilly. Reilly was the Chief Executive Officer of GlaxoSmithKline Investment Co., Ltd. ("GSK China"). GlaxoSmithKline is a multinational healthcare

---

[1] 136 S. Ct. 2090, 2106 (2016).

3

company that has offices in England and the United States. Sometime in 2011, a whistleblower who had worked for Defendants sent Chinese regulators correspondence accusing GlaxoSmithKline of bribery. Those allegations of corruption included a claim that GSK China maintained a policy of paying off doctors to increase sales. Thereafter, Defendants tried to uncover the whistleblower's identity.

As part of the ensuing inquiry, Humphrey and Yingzeng met with Reilly and other members of GSK China's senior management in GSK China's Shanghai office to discuss GlaxoSmithKline's internal investigation into the source of the whistleblower reports. According to Plaintiffs, GSK China representatives told ChinaWhys that it believed Vivian Shi, a GSK China employee who had been fired, orchestrated a "smear campaign" against GlaxoSmithKline by falsely accusing the pharmaceutical company of engaging in corrupt practices. ChinaWhys agreed to conduct a background investigation of Shi in what Plaintiffs describe as an attempt to limit the "efficacy of her extortion."[2] The details of that understanding were memorialized in a "Consultancy Agreement."[3] That agreement provided that, among other things, the arrangement was to be governed by Chinese law and that all disputes arising out of, or in connection to, it were subject to arbitration in China.[4]

GlaxoSmithKline later learned of additional whistleblower emails and GSK China asked ChinaWhys to also identify the source of those communications. In addition, GSK China personnel asked ChinaWhys to investigate certain Chinese agencies to find out who was conducting the investigation into GSK China's alleged misconduct.

In July 2013, Plaintiffs were arrested when police raided ChinaWhys' Shanghai office and Plaintiffs' Beijing home. The arrests resulted in Plaintiffs' conviction and imprisonment. They were deported from China upon their release from prison.

Reilly was subsequently convicted of bribing physicians and was also imprisoned and deported from China upon his release. The Chinese government fined GSK PLC $492 million for its bribery practices in the region, and GSK

---

[2] Plaintiffs' Br. 13, 16.
[3] Joint App'x A69.
[4] Joint App'x A74.

PLC entered a settlement agreement with the United States Securities Exchange Commission.

Plaintiffs brought this suit in the United States District Court, alleging, *inter alia*, RICO claims and pendent state law claims. GSK China was not named as a party.[5] Plaintiffs contend that their business was "destroyed and their prospective business ventures eviscerated" as a result of Defendants' misconduct.[6] They also contended that "GSK officials" knew that the accusations of corruption were true and that the bribery had been carried out at Reilly's direction.

Defendants moved to compel arbitration, or, in the alternative, to dismiss the complaint for lack of subject-matter jurisdiction. They argued that subject-matter jurisdiction was lacking because, even though Plaintiffs may have had numerous clients in the United States, their alleged injuries were foreign because Plaintiffs' business was in China, their only offices were in China, no work was done outside of China, Plaintiffs resided in China, and because any destruction of Plaintiffs' business occurred while Plaintiffs were imprisoned in China by Chinese authorities. The District Court agreed and granted Defendants' motion to dismiss. This timely appeal followed.

## B.      Legal Background

RICO "creates a private civil cause of action that allows '[a]ny person injured in his business or property by reason of a violation of section 1962 to sue in federal district court . . . ."[7]

_____

[5] GSK China was not named a defendant even though it is the arm of GlaxoSmithKline that ChinaWhys entered into the Consultancy Agreement with. Moreover, as the District Court observed, "all of Plaintiffs' contacts were with employees of either GSK China or GSK Pte Ltd., a Singaporean entity, and none were with Defendants. From the complaint, it is apparent that it was GSK China employees and GSK China's CEO who requested that Plaintiffs investigate Shi . . . ." *Humphrey v. GlaxoSmithKline*, PLC., No. CV 16-5924, 2017 WL 4347587, at *7 (E.D. Pa. Sept. 29, 2017). The decision not to name GSK China as a defendant is likely an attempt to downplay ties to China.

[6] Plaintiffs' Br. 8.

[7] *RJR Nabisco, Inc. v. European Cmty.,* 136 S. Ct. 2090, 2097 (citing 18 U.S.C. § 1964(c)).

A successful plaintiff may "recover threefold the damages. . . ."[8]

RICO is implicated when defendants have engaged in a "pattern of racketeering activity."[9]  That pattern consists of certain statutorily defined predicate acts "encompass[ing] dozens of state and federal offenses" "that together demonstrate the existence or threat of continued criminal activity."[10]  The statute "sets forth four specific prohibitions aimed at different ways in which a pattern of racketeering activity may be used to infiltrate, control, or operate a[n] enterprise['s]" criminal misconduct.[11]  Plaintiffs allege that Defendants violated two of those prohibitions—§§ 1962(c) and (d).  Section 1962(c) proscribes participating in the conduct of an interstate enterprise's affairs through a "pattern of racketeering activity,"[12] which RICO defines as "at least two acts of racketeering activity."[13]  Section 1962(d) makes it unlawful to conspire to violate subsections (a) through (c).[14]

---

[8] 18 U.S.C. § 1964(c).

[9] 18 U.S.C. § 1962(c).

[10] *RJR Nabisco*, 136 S. Ct. at 2096–97.

[11] *Id.* at 2097 (brackets in original) (citation and internal quotation marks omitted).

[12] 18 U.S.C. § 1962(c).

[13] 18 U.S.C. § 1961(5).

[14] *Id.* (citing 18 U.S.C. § 1962).  18 U.S.C. § 1962 provides:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the

To prove a violation under §1962(c), Plaintiffs must show:

> (1) that two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity; (2) that the defendant was a party to or member of that agreement; and (3) that the defendant joined

control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

7

the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity.[15]

To establish liability pursuant to § 1962(c), a plaintiff must establish the existence of an enterprise that exists "separate and apart from the pattern of activity in which [the enterprise] engages."[16] RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[17] Plaintiffs can show the presence of an enterprise by pointing to a "group of persons associated together for a common purpose of engaging in a course of conduct."[18]

The complaint alleges that the enterprise here is an association of, *inter alia*, Defendants, "others convicted of crimes related to GSK activities," "and other countries who accepted bribes and kickbacks from GSK."[19] Plaintiffs further allege that Defendants participated in the following racketeering activity: mail fraud; wire fraud; obstruction of a criminal investigation; tampering with witnesses; retaliating against a witness, victim, or an informant; use of interstate facilities to conduct unlawful activity; and money laundering.[20] Plaintiffs contend they lost their business as a result of these alleged predicate racketeering acts.[21]

In *RJR Nabisco*, the Supreme Court considered "whether RICO applies extraterritorially—that is, to events

---

[15] *United States v. John-Baptiste*, 747 F.3d 186, 207 (3d Cir. 2014) (citation omitted); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.").

[16] *United States v. Turkette*, 452 U.S. 576, 583 (1981).

[17] 18 U.S.C. § 1961(4).

[18] *Turkette*, 452 U.S. at 583.

[19] Joint App'x A54.

[20] Joint App'x A56.

[21] Joint App'x A59.

occurring and injuries suffered outside the United States."[22] The relevant inquiry involves two separate questions: first, whether RICO's substantive provisions apply to extraterritorial *conduct*, and second, whether RICO's private right of action affords relief for "*injuries* that are suffered" outside the United States. [23]

The Court explained that "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application."[24] This presumption against extraterritoriality "avoid[s] the international discord that can result when U.S. law is applied to conduct in foreign countries[.]"[25] It also ensures that Congress—rather than the judiciary—is responsible for navigating the "delicate field of international relations."[26] Nevertheless, the Court concluded that RICO can reach extraterritorial conduct.[27] However, the Court held that 18 U.S.C. § 1964(c) does not allow recovery for injuries suffered in foreign territories.[28] The Court explained that "[n]othing in § 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States."[29] Thus, although RICO creates a cause of action for misconduct committed abroad, § 1964(c) requires a "domestic injury."

However, since the plaintiffs in *RJR Nabisco* had waived their claims for domestic injuries,[30] the Court did not need to explain how courts should determine whether an alleged injury has been suffered domestically or abroad.[31] Moreover, as the District Court observed here, there is a dearth

---

[22] *RJR Nabisco, Inc.,* 136 S. Ct. at 2096.

[23] *Id*. at 2099 (emphasis added).

[24] *Id*. (citation omitted).

[25] *Id.* (citations omitted).

[26] *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013).

[27] *RJR Nabisco, Inc.,* 136 S. Ct. at 2103.

[28] *See id.* at 2106.

[29] *Id*. at 2108.

[30] *Id*. at 2111.

[31] *Bascuñán v. Elsaca*, 874 F.3d 806, 809 (2d Cir. 2017) ("The Supreme Court did not explain, however, how to determine whether an alleged injury is domestic or foreign.").

of case law grappling with the *RJR Nabisco* decision.[32]  In addition, those courts that have considered whether an alleged injury was suffered in the United States have applied varying standards.[33]  Thus, there is no consensus on what specific factors must be considered when deciding whether an injury is domestic or foreign.

*RJR Nabisco* did advise courts to proceed cautiously when deciding if RICO plaintiffs have alleged a sufficient domestic injury to recover under § 1964(c).  "[P]roviding a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct."[34]  The Court observed that the domestic injury requirement promotes comity and avoids international friction because it, *inter alia*, creates less of an opportunity for litigants in foreign countries to bypass those territories' "less generous remedial schemes."[35]  The Supreme Court also warned that allowing litigants who are abroad to sidestep foreign remedies only to seek those available under domestic law would upset the balance of competing considerations embodied in the laws of foreign countries.[36]  The Court cautioned that "the need to enforce the presumption [against extraterritoriality] is at its

---

[32] *Humphrey*, 2017 WL 4347587 at *5 ("Neither the Third Circuit Court of Appeals, other Appellate Circuits, nor the District Court for the Eastern District of Pennsylvania have addressed what constitutes a domestic or foreign injury for civil RICO purposes subsequent to the *RJR Nabisco* decision . . . .").

[33] Compare *Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu.*, No. 15 CIV. 10015 (KPF), 2017 WL 3328239, at *6 (S.D.N.Y. Aug. 3, 2017) (considering the totality of the circumstances without relying on any single circumstance), *with Union Commercial Servs.*, 2016 WL 6650399, at *4 (E.D. Mich. Nov. 10, 2016) (considering whether the defendant's conduct was intended to have effects in the United States).

[34] *Id.* at 2106.

[35] *Id.* at 2106–07 & n. 9.

[36] *Id.*

apex" when extraterritorial application of U.S. law raises the "risk" of international friction.[37]

**II.**

Because this case does not involve Article III standing, but rather presents an issue of statutory standing, subject matter jurisdiction is not implicated, and the parties incorrectly relied on Rule 12(b)(1). Our precedent makes clear that "[c]ivil RICO standing is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction."[38] Moreover, given that Rule 12(b)(6) provides a plaintiff with "significantly more protections,"[39] and because we may affirm on any ground supported by the record and "there is no prejudice to appellants in our reviewing the district court's dismissal as if it were grounded on Rule 12(b)(6),"[40] we will review this matter under Rule 12(b)(6). Accordingly, we "consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[41] In evaluating whether the complaint adequately pleads the elements of standing, we accept as true all material allegations set forth in the complaint and construe those facts in favor of Plaintiffs, the nonmoving party.[42]

**III.**

Plaintiffs allege that, as a result of Defendants' racketeering activity, Plaintiffs lost "numerous ongoing contracts and engagements with U.S. law firms and companies"—purportedly destroying "Plaintiffs' business . . . and their prospective business ventures."[43] Plaintiffs thus seek redress under § 1964(c). However, as we stated above, §

---

[37] *Id*. at 2107.

[38] *Anderson v. Ayling*, 396 F.3d 265 (2005) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000)).

[39] *Hartig Drug Co. Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 270 (3d Cir. 2016).

[40] *Maio*, 221 F.3d at 481 n.7.

[41] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). No documents were attached for the District Court's consideration.

[42] *Maio*, 221 F.3d at 481–82 (citations and internal quotation marks omitted).

[43] Joint App'x A59.

1964(c) creates no private cause of action for injuries "suffered outside the United States."[44]  Accordingly, Plaintiffs' civil RICO suit can survive a motion to dismiss only if they sufficiently allege domestic injuries.[45]  As we will explain, there is no bright-line rule that we can apply in assessing whether the alleged injuries are domestic or foreign.  Rather, we must engage in a fact-intensive inquiry that will ordinarily include consideration of multiple factors that vary from case to case.

## A.      The Domestic Injury Requirement

The District Court recognized that two "schools of thought" have emerged regarding proof of domestic injury for civil RICO claims.  The "locus of effects" test looks only to where the plaintiff felt the effects of the alleged injury and not where the injurious acts were allegedly committed.[46]  Courts applying this approach have largely focused upon the plaintiffs' place of residency or principal place of business.[47]  Other courts are guided by where the alleged misconduct was "targeted" or "directed" and focus largely, though not exclusively, on that location.[48]  Although the District Court

---

[44] *RJR Nabisco,* 136 S. Ct. at 2108 ("Nothing in § 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States.").

[45] *Id.*

[46] *Humphrey,* 2017 WL 4347587 at *6.

[47] *See, e.g.*, *Bascuñan v. Daniel Yarur ELS Amended ComplaintA*, No. 15-CV-2009 (GBD), 2016 WL 5475998, at *6 (S.D.N.Y. Sept. 28, 2016) ("All of the funds at issue, even those distributed among the Corporate Plaintiffs, were purportedly owned by Bascuñan, and thus, he is the person that ultimately suffered the loss.  And as a Chilean citizen and resident, he suffered the losses in Chile." (citations omitted)), *rev'd in part*, *vacated in part sub nom. Bascuñan v. Elsaca*, 874 F.3d 806 (2d Cir. 2017).

[48] *See, e.g.*, *Akishev v. Kapustin*, No. CV 13-7152, 2016 WL 7165714, at *1–2, 7– 8 (D.N.J. Dec. 8, 2016); *Union Commercial Servs. Ltd. v. FCA Int'l Operations LLC*, No. 16-CV-10925, 2016 WL 6650399, at *4 (E.D. Mich. Nov. 10, 2016); *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1156 (C.D. Cal. 2016).

found the former school of thought more persuasive, it ultimately did not have to adopt either approach because Plaintiffs were unable to prevail under either test.[49]

This case presents an excellent example of why the inquiry required under § 1964(c) must be undertaken in the context of the specific injuries alleged in a given case rather than relying on a one-size-fits-all approach or bright-line rule. Plaintiffs allege injuries to intangible business interests, including reputation and goodwill. Accordingly, relying on such tangible factors as the location of lost funds, damaged property or plaintiff's residence is not only of little use, but it could also be very misleading. Instead, we must consider multiple factors in determining whether the injuries in question were suffered in the United States or abroad.

Nevertheless, there is a general consensus among the courts that have had to apply *RJR Nabisco* that the location of a RICO injury depends on where the plaintiff "suffered the injury"—not where the injurious conduct took place.[50] That may result from the Court's framing of the issue in *RJR Nabisco*. The Court specifically framed the question before it as whether: "RICO's private right of action, contained in § 1964(c), applies to injuries that are suffered in foreign countries?"[51]

The Court of Appeals for the Second Circuit is one of only two federal appellate courts that have grappled with *RJR Nabisco's* domestic injury instruction. In *Bascuñán v. Elsaca*, the court considered whether a Chilean resident suffered a domestic injury although he was not located in the United States during the events in question.[52] The plaintiff there alleged that the defendant had fraudulently caused banks to wire the plaintiff's funds from the plaintiff's U.S. bank

---

[49] *Humphrey*, 2017 WL 4347587 at *6. ("[T]his Court need not decide whether the focus is entirely on where the injury occurred or if the location of the conduct is relevant, because under any of the injury-focused tests employed by other district courts, and under a conduct-focused test, it is clear to this Court that the alleged injuries suffered by Plaintiffs are foreign, and not domestic.").

[50] *See id.* (collecting cases).

[51] *RJR Nabisco*, 136 S. Ct. at 2099.

[52] 874 F.3d 809 (2d Cir. 2017).

accounts to the defendant's accounts.[53] The plaintiff also alleged that the defendant or his agent physically removed bank shares from the plaintiff's New York safety deposit box.[54] The district court held that the plaintiff could not allege a domestic injury because he was a resident of Chile, and the injuries alleged were necessarily suffered at the plaintiff's place of residence.[55] Two questions guided the court's inquiry: who became poorer as a result of the alleged conduct and where did that individual become poorer?[56] "Its holding set forth, in sum and substance, the following rule: a foreign plaintiff who suffered an 'economic loss' due to a RICO violation cannot, absent extraordinary circumstances, allege a domestic injury."[57]

On appeal, the Court of Appeals for the Second Circuit rejected the district court's "residency-based" approach and held that "a plaintiff who is a foreign resident may [in fact] allege a civil RICO injury that is domestic."[58] It noted that the district court's focus on the plaintiff's place of residence improperly disregards *RJR Nabisco's* attempt "to make plain that its opinion should not be taken to 'mean that foreign plaintiffs may not sue under RICO.'"[59] The Second Circuit opined that the focus of the domestic injury analysis should be the location of the alleged injuries as opposed to the location of the plaintiff's residence or of the defendant's alleged misconduct. The court explained: "[i]n order to determine where the [injuries] alleged by a civil RICO plaintiff are located geographically, courts must examine more closely the specific type of injuries alleged."[60] It then categorized the alleged injury as an injury to tangible property, which "can be fairly said to exist in a precise location."[61] Taking that approach, the court easily concluded that "[w]here the injury is

---

[53] *Id.* at 811.

[54] *Id.* at 810.

[55] *Id.* at 809.

[56] *Id.* at 813–14.

[57] *Id.* 809–10.

[58] *Id.* at 814.

[59] *Id.* at 821 (emphasis omitted) (citing *RJR Nabisco*, 136 S. Ct. at 2110 n. 12).

[60] *Id.* at 817.

[61] *Id.* at 820.

14

to tangible property . . . absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad."[62]

Thus, the court held that when a defendant's conduct is alleged to effect tangible property, the location of that property usually constitutes the place of the injury. Since the plaintiff's money and bank shares were in the United States when stolen, the court reasoned that the injury occurred in New York and the plaintiff therefore properly alleged a domestic RICO injury.[63] Several considerations counseled that conclusion. The court reasoned that plaintiffs who are injured as a result of harm done to their domestically located tangible property are entitled to the remedial benefits conferred by a RICO private right of action because such litigants "expect that our laws will protect them in the event of damage to that property."[64] That "expectation [was] entirely justified, especially when we consider that a foreign resident's property located in the United States is otherwise subject to all of the regulations imposed on private property by American state and federal law."[65] The rule thus "ensures that both foreign and domestic plaintiffs can obtain civil RICO's remedy for damage to their property[.]"[66]

Although this approach, which focuses on the location of the property giving rise to the harm, is useful where the alleged injury is to tangible property, it is not helpful where, as here, harm to intangible business interests is alleged. The location of such injuries simply cannot be identified with the same geographic certainty that is endemic in the very concept of tangible property. Thus, courts grappling with alleged injuries to intangible property have largely tried to trace the location of the effects of the alleged injurious conduct to determine the place of injury. In other words, these courts have aligned themselves with the locus of effects approach and focus on where the plaintiff felt the effects of the injury-inducing predicate acts, no matter where they occurred.

---

[62] *Id*. at 820–21.

[63] *Id*.

[64] *Id*. at 821.

[65] *Id*. at 821.

[66] *Id.*

15

For example, in *Cevdet Aksut Ogullari Koll. Sti. v. Cavusoglu*, the district court found that a plaintiff's principal place of business and the location of its operations were merely helpful considerations in determining whether the effects of an alleged injury were domestic or foreign.[67] There, a Turkish corporation "assert[ed] that its domestic business was injured because it had . . . annual sales to customers in the United States prior to transacting with the RICO enterprise."[68] The court held that, even if it were to assume that the plaintiff lost earnings from customers located in the United States, it nonetheless could ascertain no "domestic injury to [the plaintiff's] business because its business [was] entirely located in and operated out of Turkey."[69] The "plaintiff's injury was felt in the only place it had ever been located, in Turkey."[70] Although the *Cevdet* court found the physical location of the plaintiff's corporation to be relevant, it did not announce the same kind of residency-based rule that was rejected by the Court of Appeals in *Bascuñán*. Instead, it declared that a foreign corporation with "substantial business operations within the United States" could, hypothetically, assert a RICO domestic injury because the injury could be felt in the United States.[71]

Picking up where *Cevdet* left off, the district court in *Elsevier, Inc. v. Grossman* (*Elsevier II*) held that, in assessing whether a plaintiff has alleged a domestic RICO injury to its intangible business operations, courts should determine where the "substantial negative business consequences occurred."[72] The court suggested that a plaintiff might be able to show a domestic injury by alleging "some effect on Plaintiffs'

---

[67] 245 F. Supp. 3d 650 (D.N.J. 2017).

[68] *Id.* at 653.

[69] *Id.* at 659.

[70] *Id.* at 660.

[71] *Id.* at 659.

[72] 199 F. Supp. 3d 768, 786 (S.D.N.Y. 2016) ("If the plaintiff has suffered an injury to his or her business, the court should ask where substantial negative business consequences occurred. By contrast, if the plaintiff has suffered an injury to his or her property, the court should ask where the plaintiff parted with the property or where the property was damaged.").

relationships with actual or prospective U.S. customers."[73] The court, however, found that the plaintiff had made no such allegation. Elsevier, the plaintiff, had sued to recover after it sold academic journals to the defendants at discounted rates because of the defendants' alleged misrepresentations that they were buying the journals for "valid personal use."[74] The plaintiff argued that he suffered a domestic injury simply because the defendants ordered the subscriptions from the United States and paid for them with checks drawn on a U.S. bank account. First, the court held that this was insufficient to show that the plaintiff's injuries occurred in the United States. The trial court noted "that it is possible for fraudulent conduct to take place in one location, but cause injury in another location."[75] While resolving post-trial motions, though, the district court found that, as alleged, "48 of the 51 fraudulent subscriptions were either physically shipped from the United States or were authorized for shipment by an Elsevier employee located in the United States."[76] Accordingly, the district court reversed course and found that the plaintiff "relinquished control of the journals in the United States under false pretenses and thereby suffered the effects of [the defendant's fraudulent] conduct in the States."[77] The court therefore found that the plaintiff's harm constituted a domestic injury "even if [the plaintiff] were a foreign entity."[78]

Despite *Elsevier II*'s earlier indication that, in determining whether an injury is domestic, "court[s] should ask where substantial negative business consequences occurred,"[79] its post-trial opinion was based on its finding that the alleged misappropriation of the plaintiff's property occurred in the United States. That is consistent with the approach taken by the Court of Appeals in *Bascuñán.*

---

[73] *Id.* at 788.

[74] *Elsevier Inc. v. Pierre Grossmann, IBIS Corp.* (*Elsevier III*), 2017 WL 5135992, at *1 (S.D.N.Y. Nov. 2, 2017).

[75] *Elsevier II*, 199 F. Supp. 3d at 788.

[76] *Elsevier III*, 2017 WL 5135992, at *4.

[77] *Id.*

[78] *Id.*

[79] *Elsevier II*, 199 F. Supp. 3d at 786.

Nevertheless, since *Elsevier* involved an alleged injury to tangible property, it is not helpful to our inquiry here.[80]

The court's analysis in *Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu* is more analogous to our inquiry.[81] The plaintiff there was a Chinese company that was one of the largest purchasers of soybeans produced in the United States.[82] It alleged, *inter alia*, that the defendant's RICO misconduct caused the plaintiff to lose contracts with soybean suppliers in the United States.[83] The plaintiff claimed the loss of much of its market share and that its business operations slowed as a result of its inability to receive soybeans from U.S. suppliers at the same volume as before the defendant's alleged misconduct.[84] The plaintiff also alleged that it was forced to terminate 90 of its China-based employees.[85] The court disregarded the location of the predicate acts that were alleged and instead focused only on where the plaintiff felt the effects of the alleged injury.[86] That analysis caused the court to conclude that the plaintiff failed to establish a domestic injury. The trial court found that "[a]ny deprivation of [the] [p]laintiff's money was felt in China. And, in sharp contrast to *Elsevier*, [the] Plaintiff was not deprived of its property in the United States[] [because,] indeed, [the] Plaintiff received all of the soybeans for which it contracted with U.S. suppliers."[87]

---

[80] *Dandong Old N.-E. Agric. & Animal Husbandry Co.*, 2017 WL 3328239 at \*6 (clarifying that *Elsevier* "focused on where the plaintiff had been deprived of money or property [and] . . . found that the plaintiff had sufficiently alleged a domestic injury by asserting that nearly all of the subscriptions at issue had been shipped from within the United States—and thus, that the plaintiff had been deprived of its property (i.e., the scientific journals) in the United States" (citing *Elsevier III*, 2017 WL 1843298, at \*6)).

[81] *Id.* \*13

[82] *Id.* at \*1.

[83] *Id.* at \*3.

[84] *Id.*

[85] *Id.*

[86] *Id.* at \*11.

[87] *Id.* at \*13.

The plaintiff's principal place of business was in China, all the terminated employees were fired in China, any expenses resulting from the alleged misconduct were paid from China, and the plaintiff's business operated only out of China.[88] The court found that the foreign plaintiff's allegation that it lost prospective business opportunities from U.S. suppliers insufficient to establish that the plaintiff experienced a domestic injury because such a claim, without more, "is far too attenuated to suffice as a domestic injury under RICO."[89] For these reasons, the *Dandong* court ultimately held that "[r]egardless of where the conspirators' conduct took place, [the p]laintiff's injury was felt in China, the only place its business had ever been located."[90] Although other courts have reached similar results,[91] *Dandong*'s approach to determining the location of the alleged injury is particularly helpful because it is nuanced and the court considered the totality of the circumstances without relying on any single circumstance.

As we will explain, a focus upon where the alleged injuries were felt best guides our inquiry. However, unlike courts that have taken this "locus of effects" approach, we do not view a plaintiff's residence or principal place of business as detemintive. Although it will almost always be an important

---

[88] *Id*. at *14.

[89] *Id*. at *13.

[90] *Id*. at *14.

[91] In *City of Almaty, Kazakhstan v. Ablyazov* for example, the plaintiff alleged that the defendant (who was the former mayor) stole city funds and invested those funds in New York City real estate projects. 226 F. Supp. 3d 272, 275 (S.D.N.Y 2016). The court held that even though the mayor and his co-conspirators used the funds in the United States, the plaintiff did not suffer a domestic injury. *Id.* at 284. In other words, because the plaintiff suffered economic harm to its business, the place of injury was "the state of plaintiff's residence, and foreign corporations are recognized to reside either in their principal place of business or their place of incorporation." *Id.* at 282 (citation and internal quotations omitted). Unlike Plaintiffs here, the plaintiff in *City of Almaty* alleged no additional contacts with the United States. The case therefore offers limited guidance here.

19

factor, allegations in a given case will ususaly necessitate consideration of additional factors as well.

**B.    Merits**

With this background as our guide, we must determine if Plaintiffs here have alleged a plausible domestic injury under § 1964(c). We begin with *RJR Nabisco*'s clear command: the analysis of whether a plaintiff has alleged a domestic injury must focus principally on where the plaintiff has suffered the alleged injury.[92]  "Nothing in § 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States."[93]

As noted above, the Court in *RJR Nabisco* cautioned against applying U.S. law in the absence of a domestic injury for the substantial practical and policy reasons the Court explained. Thus, we must decide if Plaintiffs' alleged domestic injuries justify allowing a civil remedy under RICO. There may well be cases where plaintiffs do, in fact, suffer some injury in the United States and courts must determine whether those domestic injuries are sufficient to justify application of domestic law despite the concerns the Supreme Court has explained. As with any standard that is not susceptible to mechanical application, "few answers will be written in black and white."[94] We therefore appreciate that some cases will be so close that courts may have to split jurisdictional hairs to determine if a domestic injury has been alleged. As we explain, the Plaintiffs here have not really alleged any domestic injury, so we have no trouble concluding that they have not alleged a sufficient injury to defeat that presumption and justify the extraterritorial application of domestic law.

Given the intangible nature of the alleged injuries here, our inquiry must focus primarily upon where the effects of the predicate acts were experienced. This will better allow for appropriate consideration of the nuanced nature of intangible interests.

Whether an alleged injury to an intangible interest was suffered domestically is a particularly fact-sensitive question requiring consideration of multiple factors. These include, but are not limited to, where the injury itself arose; the location of

---

[92]*RJR Nabisco*, 136 S. Ct. at 2108.

[93] *Id.*

[94] *Kulko v. Superior Court of California*, 436 U.S. 84, 92 (1978) (internal quotation marks omitted).

20

the plaintiff's residence or principal place of business; where any alleged services were provided; where the plaintiff received or expected to receive the benefits associated with providing such services; where any relevant business agreements were entered into and the laws binding such agreements; and the location of the activities giving rise to the underlying dispute.

As we have already explained, the applicable factors depend on the plaintiff's allegations; no one factor is presumptively dispositive.[95] A domestic injury under § 1964(c) is found where the relevant factors, appropriately weighed, establish that the alleged harm was suffered in the United States.[96] Although they have rarely done so explicitly, the courts that have applied *RJR Nabisco*—including the District Court here—have largely engaged in this kind of multi-factor inquiry.[97]

Applying these principles to the allegations here, we have no difficulty concluding that Plaintiffs have not alleged a domestic injury. Rather, it is clear that the alleged injuries were suffered in China. As the District Court noted, at all relevant times, Plaintiffs lived in China; had their principal place of business in China; provided services in China (albeit to some American companies – but even they were operating in China); entered the Consultancy Agreement in China and agreed to have Chinese law govern it;[98] met with Defendants'

---

[95] *See, e.g.*, *Bascuñán*, 874 F.3d at 824 (noting that "[a] plaintiff's residence may often be relevant—perhaps even dispositive—in determining whether certain types of business or property injuries constitute a domestic injury"); *Dandong*, 2017 WL 3328239, at *13–14 (considering a plethora of factors to determine whether the alleged intangible injuries constitute a domestic injury).

[96] *RJR Nabisco*, 136 S. Ct. at 2108 ("Nothing in § 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States.").

[97] *See, e.g.*, *Dandong*, 2017 WL 3328239 at *13–14; *Tatung Co.*, *Ltd.,* 217 F. Supp. 3d at 1155–56.

[98] We recognize that our review of a motion to dismiss is generally limited to the face of the complaint and documents attached to it. However, we may consider the Consultancy

representatives only in China; and themselves indicated on the civil cover sheet that the underlying incident arose in China.[99] "[C]ompanies came to [ChinaWhys] when they sought to do business in China."[100] Plaintiffs have not alleged that they possess offices, assets, or any other property in the United States. Thus, Plaintiffs have not alleged a domestic injury pursuant to 18 U.S.C. § 1964(c), even though they do allege loss of goodwill and some unidentified number of actual and prospective U.S. customers.[101] To the extent that these intangible assets were injured, it is not enough to overcome the Supreme Court's caution against extraterritorial application of domestic law in *RJR Nabisco.* Consequently, the District Court correctly dismissed Plaintiffs' RICO claims.

Dismissal of those claims is consistent with *RJR Nabisco's* policy considerations. As noted earlier, the Supreme Court cautioned against the risks of "international friction" associated with allowing foreign entities to "bypass" potentially "less generous remedial schemes" available in their home jurisdictions and pursue treble damages for injuries suffered abroad through civil RICO actions in the United States.[102] Plaintiffs seek redress here for Defendants' alleged racketeering activity although Plaintiffs were prosecuted and imprisoned in China. "Allowing [Plaintiff's] RICO claims to

---

Agreement because Defendants attached the undisputed document as an exhibit to its motion to dismiss and Plaintiffs claims are based on the document. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Schuchardt*, 839 F.3d 336, 343 (3d Cir. 2016) ("If . . . the defendant contests the pleaded jurisdictional facts, "the court must permit the plaintiff to respond with evidence supporting jurisdiction." (citation and internal quotation marks omitted).

[99] *Humphrey*, 2017 WL 4347587, at *6 n.14.

[100] *Id.* at *6.

[101] It is unclear whether an allegation of harm to goodwill constitutes a showing of "a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483 (citation and internal quotation marks omitted).

[102] *RJR Nabisco*, 136 S. Ct. at 2106–07 (citation and internal quotation marks omitted).

proceed under these circumstances would be at odds with the Supreme Court's directive that the need to enforce the presumption against extraterritoriality is 'at its apex' when remedies available in United States courts may conflict with those available abroad."[103]  Indeed, it would be odd to permit Plaintiffs to seek civil redress for alleged harm arising from the very crimes they were convicted of in China and that arose from China's application of its own criminal laws, absent allegations that would give rise to a domestic injury in the United States.

We realize that the Court of Appeals for the Seventh Circuit rejected the analytical approach that we today adopt, in *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*[104]  But we do not find that analysis particularly helpful or persuasive here. There, that court held that "a party experiences or sustains injuries to its intangible property at its residence."[105]  The *Armada* plaintiff was a Singapore shipping company that alleged that the Illinois-based defendant violated RICO by thwarting the plaintiff's attempt to recover on its breach of contract claim.  The court held, without much discussion, that the plaintiff's "principal place of business [was] in Singapore, so any harm to [the plaintiff's] intangible bundle of litigation rights was suffered in Singapore."[106]  It therefore concluded that the "injury [was] not domestic, and [that the plaintiff had] failed to plead a plausible claim under civil RICO."[107]

Although the ease with which such a bright-line rule can be applied gives it some surface appeal, we resist the temptation to adopt it as the law of this circuit.  While courts have generally noted that a company suffers economic injuries

---

[103] *City of Almaty*, 226 F. Supp. 3d at 287 (citing *RJR Nabisco*, 136 S. Ct. at 2107).

[104] 885 F.3d 1090 (7th Cir. 2018).

[105] *Armada*, 885 F.3d at 1094–95 (citing *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 805 (7th Cir. 1997). Although we reject the analytical framework used in *Armada*, we note that it would not necessarily lead to a different result here because Plaintiffs resided in China when Defendants are alleged to have engaged in the conduct Plaintiffs rely upon for RICO liability.

[106] *Id.* at 1095.

[107] *Id.*

at its principal place of business, few have done so in the context of a RICO claim that would extend beyond the borders of the United States. [108]   Even fewer have done so where the alleged conduct had an effect on intangible property.  Although a litigant's residence or principal place of business is obviously a relevant consideration, and perhaps a useful place to begin a § 1964(c) inquiry, it does not necessarily determine the ultimate question of whether there has been a domestic injury. It is merely one factor that informs our inquiry.

The Supreme Court anticipated that the RICO domestic injury inquiry would not always be susceptible to easy resolution.  The Court explained that "[t]he application of [the domestic injury rule] in any given case will not always be self-evident, as disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic.'" [109]  Moreover, we think the *Armada* rule is too inflexible to be useful in resolving cases where the nature of the injured property interest is not "self-evident."[110]

*Armada*'s residency-based rule also effectively precludes all foreign plaintiffs alleging intangible injuries from recovering under § 1964(c) regardless of their alleged connection with the United States.  "It cannot be the case that the mere fact that a loss is economic means that foreign corporations are unable to avail themselves of the protections of civil RICO, even in cases where all of the actions causing the injury took place in the United States."[111]   There is no evidence that Congress meant to so preclude foreign corporations from the protection offered by § 1964(c) and doing so conflicts with the Supreme Court's recognition that "Congress did not limit RICO to domestic enterprises."[112]

We next address Plaintiffs' contention that, notwithstanding factors supporting a finding that the alleged

---

[108] *See, e.g., id.* (collecting cases); *see also Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999) ("When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss.").

[109] *RJR Nabisco*, 136 S. Ct. at 2111.

[110] *Id.*

[111] *Tatung Co., Ltd.*, 217 F. Supp. 3d at 1155.

[112] *RJR Nabisco*, 136 S. Ct. at 2104.

injury was foreign, they have nonetheless alleged a domestic injury because "the alleged underlying RICO conduct plainly was both targeted at, and was intended to have substantial effects in, the United States."[113]  We disagree.

As we mentioned at the outset, a minority of courts have suggested that a plaintiff can show that it has suffered a domestic injury by merely pointing to misconduct that occurred in, or was directed to, the United States.  However, those cases are also not helpful here and do not establish the domestic injury that Plaintiffs claim.  Plaintiffs contend *Akishev v. Kapustin*[114] relied on this so-called "location of the injury-inducing conduct" test.[115] The plaintiffs there were citizens of multiple foreign countries who were fraudulently induced to make online purchases of used cars from the defendant's U.S. dealership.[116]  The plaintiffs alleged no other connection to the United States.  The court found that the location of the fraudulent conduct was *an* important factor in determining whether there was a "domestic injury," because the case arose in the context of an online sale.  The court reasoned that "[i]f [the] plaintiffs [had] traveled to the United States, went to the physical location of [the defendant's] purported car dealerships . . . chose a car, paid for it on the spot, and arranged for the car to be shipped to Eastern Europe, [the] plaintiffs would have suffered from a clear domestic injury when [the defendant] failed to deliver the car and failed to return plaintiffs their money."[117]  The case may well be helpful when allegations involve the tenaciously difficult question of where misconduct in cyberspace occurs.  However, it is of limited assistance here.

We do note, however, that "the court [ultimately] appeared to focus on where plaintiffs' injuries were felt—*i.e.*, on defendant's United States-based website and, therefore, in the United States."[118]  To this extent, *Akishev's* actual holding relies on the "locus of effects" approach discussed above and

---

[113] Plaintiffs' Br. 35.

[114] 2016 WL 7165714 at *1 (D.N.J. Dec. 8, 2016).

[115] Plaintiffs' Br. 32–33.

[116] *Akishev*, 2016 WL 7165714 at *7.

[117] *Id*.

[118] *Cevdet Aksut Ogullari Koll. Sti*, 245 F. 3d Supp. at 657 (citing *Akishev*, 2016 WL 7165714 at 8*).

25

does not itself compel the adoption of an approach that places undue emphasis on the location of the alleged injury-inducing misconduct.

Plaintiffs also rely on *Tatung Co., Ltd. v. Shu Tze Hsu*[119] and claim that it emphasizes that the location of a defendant's conduct is important in determining whether a domestic injury has been alleged. Even so viewed, *Tatung* does not support Plaintiffs' contention. The foreign plaintiff maintained a "hub" of business in the United States and extended credit and delivered goods to one of the defendants within the United States.[120] When the defendant defaulted on its credit obligation, the plaintiff was awarded a judgment through arbitration in California.[121] The plaintiff subsequently alleged a RICO conspiracy to siphon funds from the defendant's corporation and render it an empty shell in order to avoid the judgment.[122] The court found that RICO civil liability was appropriate because "the defendants specifically targeted their conduct at California with the aim of thwarting [the plaintiff's] rights in California."[123] The court found a domestic injury because the plaintiff had a domestic judgment entitled to the protection of United States law.[124] The *Tatung* plaintiff also maintained substantial business operations within the United States and contractually availed itself of dispute resolution via arbitration within the United States.[125] Consequently, the plaintiff in that case could plausibly argue that its United States-based business was harmed by the defendants' RICO conduct and that it suffered a domestic injury because it felt the impact of that injury within the United States.

Finally, Plaintiffs rely upon *Union Commercial Services. Ltd. v. FCA International Operations LLC*'s suggestion that a plaintiff could allege a domestic injury under RICO by simply pointing to injurious conduct intended to

---

[119] 217 F. Supp. 3d 1138, 1155 (C.D. Cal. 2016).

[120] *Id.* at 1155.

[121] *Id.* at 1156.

[122] *Id.* at 1158.

[123] *Id.* at 1157.

[124] *Id.* at 1156.

[125] *Id.* at 1155–56.

produce effects in the United States.[126]  They contend that "the alleged underlying RICO conduct [here] plainly was both targeted at, and was intended to have substantial effects in, the United States" because "[a] central goal of the alleged racketeering conduct was to avoid detection and further sanctions from U.S. regulators and criminal authorities . . . ."[127]  In *Union Commercial*, the court relied upon cases decided in the context of antitrust law and concluded that courts must ask "whether a defendant's conduct is intended to or has produced 'substantial effects' in the United States."[128, 129]  The court found that the plaintiff suffered no "domestic injury" because the "defendants' alleged conduct was directed at, and any effects were felt by, plaintiff's business or property interests outside of the United States."[130]  Here again, even though the court emphasized the nature of the defendant's conduct, it focused on the fact that the effects of the alleged harm were felt outside the United States.

Given the numerous factors we have discussed that converge to paint a picture of an injury in China and not in the United States, the individual circumstances that Plaintiffs rely on cannot establish a domestic injury.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[126] No. 16-CV-10925, 2016 WL 6650399, at *4 (E.D. Mich. Nov. 10, 2016).

[127] Plaintiffs' Br. 35.

[128] *Union Commercial Servs. Ltd.*, 2016 WL 6650399 at *4.

[129] *RJR Nabisco* observed that "[t]here is good reason not to interpret § 1964(c) to cover foreign injuries just because the Clayton Act[, a federal antitrust statute,] does so."  *RJR Nabisco*, 136 S.Ct. at 2109.  First, the Clayton Act explicitly authorizes foreign entities to bring suit under the statute.  *Id.*  Further, and as the Court described in *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004), the Foreign Trade Antitrust Improvements Act of 1982 excludes from the reach of antitrust laws "most conduct that 'causes only foreign injury.'"  *RJR Nabisco*, 136 S.Ct. at 2109 (citing *Empagran*, 542 U.S. at 158).

[130] *Union Commercial Servs.*, 2016 WL 6650399, at *5.