**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLOBAL MASTER
INTERNATIONAL GROUP, INC.;
GLOBAL MASTER
CORPORATION,

*Plaintiffs-Appellants*,

v.

ESMOND NATURAL, INC.; PAUL
CHIA-YIN WEI,

*Defendants-Appellees*.

No. 21-55809

D.C. No.
2:19-cv-10360-
RGK-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted August 30, 2022
Submission Withdrawn January 18, 2023
Resubmitted August 7, 2023
Pasadena, California

Filed August 11, 2023

Before: Milan D. Smith, Jr. and Ryan D. Nelson, Circuit Judges, and Gershwin A. Drain,[*] District Judge.

Opinion by Judge R. Nelson

## SUMMARY[**]

### RICO

The panel reversed in part the district court's summary judgment, based on a lack of statutory standing, in an action brought by Global Master Corporation, a Chinese company, seeking relief under the Racketeer Influenced and Corrupt Organizations Act for allegedly defective products purchased from California-based Esmond Natural, Inc.

Global Master Corporation and its sister company Global Master International Group, Inc., located and headquartered in California (collectively, Global Master) imported nutritional supplements from the United States and marketed them to consumers in China. Global Master alleged that Esmond Natural used lower strength or entirely different supplements to fill orders. The district court held that Global Master failed to satisfy statutory standing because it lacked a domestic injury as its alleged harm was

---

[*] The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

felt in China, and civil claims brought under RICO do not allow recovery for foreign injuries.

The panel held that under *Yegiazaryan v. Smagin*, 143 S. Ct. 1900 (2023), the district court applied the wrong legal standard. *Yegiazaryan* clarified that a "plaintiff alleges a domestic injury for purposes of [18 U.S.C.] § 1964(c) when the circumstances surrounding the injury indicate it arose in the United States." *Yegiazaryan* held that "courts should look to the circumstances surrounding the alleged injury to assess whether it arose in the United States," including "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." The panel held that, under this test, Global Master suffered a domestic injury because, pursuant to the parties' contracts, Global Master took all deliveries of the supplements in Los Angeles. Thus, Esmond Natural's fraud injured Global Master's property in California.

The panel remanded to the district court for further proceedings. In a concurrently filed memorandum disposition, the panel affirmed on other issues.

---

## COUNSEL

Richard A. De Liberty (argued) and Kavon Adli, The Internet Law Group, Beverly Hills, California, for Plaintiffs-Appellants.

Andres F. Quintana (argued), Quintana Law Group APC, Agoura Hills, California, for Defendants-Appellees.

**OPINION**

R. NELSON, Circuit Judge:

Global Master Corporation, a Chinese company, seeks relief under the Racketeer Influenced and Corrupt Organizations Act for allegedly defective products purchased from California-based Esmond Natural, Inc. The district court held that Global Master Corporation failed to satisfy statutory standing because it lacked a domestic injury as its alleged harm was felt in China. Under the Supreme Court's decision in *Yegiazaryan v. Smagin*, 599 U.S. ---, 143 S. Ct. 1900 (2023), the district court applied the wrong legal standard. Applying *Yegiazaryan*, we reverse and remand.[1]

I

A

Plaintiffs-Appellants Global Master Corporation (GMC) and Global Master International Group, Inc. (GMIG) (collectively, Global Master) import nutritional supplements from the United States and market them to consumers in China. GMC is located and headquartered in China. GMIG is GMC's sister company located and headquartered in California. From 2006 to 2017, Esmond Natural, Inc., a California company, was GMC's chief supplier of private-label, U.S.-made supplements. Around 2017, GMC allegedly grew dissatisfied with Esmond Natural's products because of production delays and product defects. GMC began to terminate its business relationship with Esmond

---

[1] We address the Appellants' remaining challenges in a concurrently filed Memorandum Disposition which affirms the district court on those issues.

Natural, and GMIG was established to supply supplements. GMIG then hired a former Esmond Natural employee, Anson Hsu, to build relationships with new suppliers, including some that had manufactured supplements used by Esmond Natural and sold to GMC.

GMC claims that after Hsu started working at GMIG, he uncovered a systematic scheme of fraud in which Esmond Natural allegedly used lower strength or entirely different supplements to fill GMC's orders. GMC sued Esmond Natural under the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging predicate acts of mail and wire fraud.

## B

The district court granted summary judgment for the defendants, finding that GMC had not suffered a domestic injury because its alleged injury was mainly felt in China. Noting, at that time, that neither the Supreme Court nor the Ninth Circuit had defined the meaning of "domestic injury," the district court pointed to two definitions used by courts: (1) where the plaintiff suffered the injury ("injury-felt test") or (2) where the conduct that caused the injury occurred ("injury-causing test"). *Compare City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 282 (S.D.N.Y. 2016) ("[T]he appropriate subject of the inquiry required by *RJR Nabisco* is not the location of the Crossclaim Defendants' purportedly injurious conduct but the location where the injury itself arose."), *with Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1156 (C.D. Cal. 2016) ("[T]he defendants specifically targeted their conduct at California with the aim of thwarting Tatung's rights in California. It would be absurd to find that such activity did not result in a domestic injury to Plaintiff." (citation & internal quotation marks omitted)). The district

court applied the "injury-felt test," concluding that most courts have adopted the first line of reasoning: where the plaintiff suffered, or felt, the injury controls whether the injury is "domestic." The district court noted that GMC's inferior products (which it sold in China), and loss of goodwill (in the Chinese market) demonstrated harm felt in China. This timely appeal followed. We stayed this appeal pending the Supreme Court's decision in *Yegiazaryan v. Smagin*, 599 U.S. ---, 143 S. Ct. 1900 (2023) and now address the merits.

## II

We review the grant of summary judgment on GMC's RICO claim de novo. *Ikuno v. Yip*, 912 F.2d 306, 308 (9th Cir. 1990). "[V]iewing the evidence in the light most favorable to the nonmoving party," we determine whether "there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

## III

We first review RICO's statutory framework and relevant precedent to define domestic injury.

## A

RICO, codified at 18 U.S.C. §§ 1961–1968, extends civil and criminal penalties for acts performed as part of an ongoing criminal organization or enterprise, known as "prohibited activities." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989). A party violates RICO by engaging in a "pattern of racketeering activity—a series of related predicates that together demonstrate the existence or threat of continued criminal activity" to "infiltrate, control, or

operate an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 330 (2016) (citations & internal quotation marks omitted).

18 U.S.C. § 1964(c) allows for a private civil action to be brought by "[a]ny person injured in his business or property by reason of" a RICO violation.  The required elements of a RICO private civil action are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."  *United Brotherhood of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

Parties suing under RICO must also satisfy its statutory standing requirement.  *See Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969, 975 (9th Cir. 2008).  "A civil RICO 'plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'"  *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Thus, to establish statutory standing, a civil RICO plaintiff must show: "(1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was by reason of the RICO violation, which requires the plaintiff to establish proximate causation." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118–19 (9th Cir. 2017) (quoting *Canyon County*, 519 F.3d at 972).  The injury to the business or property, however, must be "domestic," as civil claims brought under RICO do not allow recovery for foreign injuries. *RJR Nabisco*, 579 U.S. at 354.

The Supreme Court has applied a presumption against extraterritorial application for private civil RICO claims. "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id*. at 335. Thus, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id*. (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)). The presumption "serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign countries." *Id*. at 335. This said, § 1964(c)'s domestic injury requirement "does not mean that foreign plaintiffs may not sue under RICO." *Id*. at 353 n.12. As the Supreme Court explained, "[t]he application of [the domestic injury] rule in any given case will not always be self-evident, as disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic.'" *Id*. at 354.

B

The Supreme Court recently defined domestic injury under § 1964(c). *Yegiazaryan*, 143 S. Ct. at 1912. *Yegiazaryan* clarified that a "plaintiff alleges a domestic injury for purposes of §1964(c) when the circumstances surrounding the injury indicate it arose in the United States." *Id.* In so doing, the Court affirmed our opinion below and agreed that the domestic injury requirement is context specific and turns on the facts alleged in the complaint. *Id.* at 1909. As such, "courts should look to the circumstances surrounding the alleged injury to assess whether it arose in the United States," including "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." *Id.*

*Yegiazaryan* concerned a Russian citizen residing in Russia (Smagin), who filed a civil RICO suit against another Russian citizen living in California (Yegiazaryan).  *See* 37 F.4th 562, 564 (9th Cir. 2022).  Smagin secured a foreign arbitration award against Yegiazaryan and subsequently obtained a federal district court judgment confirming the award, giving him a right to execute it in California.  *Id*.  In his RICO suit, Smagin alleged that Yegiazaryan engaged in fraudulent conduct to prevent him from executing the California judgment.  *Id.* at 565.

We held that the judgment existed as intangible property in California because "that is where Plaintiff desires to exercise the rights conferred by the California Judgment." *Id*. at 567.  The California Judgment was not property in Russia because the judgment granted Smagin no rights in Russia.  *Id*.  Thus, because Smagin claimed that Yegiazaryan's illegal conduct was designed to subvert Smagin's right to execute California property, we concluded that the alleged harm constituted a domestic injury.  *Id.* at 567–68.  We emphasized that "[t]he key question, then, is *where* the California Judgment exists as property." *Id*. at 567.  This, we noted, followed *RJR Nabisco*'s statement that "it is the location of the *injury* that is relevant to standing." *Id*. at 568.  Our approach also aligned with the Second and Third Circuits after *RJR Nabisco*.  *Id*. at 568, 570 (citing *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 702, 706 (3d Cir. 2018); *Bascuñán v. Elsaca*, 874 F.3d 806, 820–21 (2d Cir. 2017)).

The Supreme Court agreed.

So understood, §1964(c)'s focus is on the injury, not in isolation, but as the product of racketeering activity.   Thus, in assessing

> whether there is a domestic injury, courts
> should engage in a case-specific analysis that
> looks to the circumstances surrounding the
> injury.  If those circumstances sufficiently
> ground the injury in the United States, such
> that it is clear the injury arose domestically,
> then the plaintiff has alleged a domestic
> injury.

*Yegiazaryan*, 143 S. Ct. at 1910.  The Court also noted that "[b]ecause of the contextual nature of the inquiry, no set of factors can capture the relevant considerations for all cases." *Id.*  Therefore, "what is relevant in one case to assessing where the injury arose may not be pertinent in another." *Id.*

The Court's opinion also approved the contextual approaches taken by the Second and Third Circuits and invalidated the Seventh Circuit's residency requirement. *Id.* at 1907.  The Second Circuit first applied an "injury-occurred" test for tangible property in *Bascuñán,* 874 F.3d at 820–21.  The court held that "absent some extraordinary circumstance, the injury [to tangible property] is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." *Id.*  Under this standard, the court concluded that the misappropriation of funds held in the plaintiff's New York bank accounts constituted a domestic injury even though both parties were citizens and residents of Chile. *See id.* at 820–24.  "[T]he location of the property and not the residency of the plaintiff is the dispositive factor." *Id.* at 824.  Because the money and bearer shares were in New York when stolen, the plaintiff sufficiently alleged a domestic injury. *See id.* at 810–11.

The Second Circuit reasoned that plaintiffs who suffer injury as a result of harm to their domestically located tangible property are entitled to relief under RICO for two reasons: (1) such litigants would expect that United States law would protect their property interests in the event of damage and (2) a foreign resident's property located in the United States is otherwise subject to all the regulations imposed on private property by state and federal law.  *Id*. at 821.

Also recognizing the need to avoid expanding RICO extraterritorially, the *Bascuñán* court did not hold that "a plaintiff's place of residence is *never* relevant to the domestic injury inquiry required by *RJR Nabisco*."  *Id*. at 824.  Nor did the court hold that any contact with the United States suffices to make an injury domestic.  *See id*.  But the injuries must have a sufficient relationship to the United States to qualify as "domestic" under the circumstances.  *Id*.

The Third Circuit also rejected a residency requirement for claims related to intangible property.  *Humphrey*, 905 F.3d at 702, 706.  Instead, the court applied a multi-factor test that examined:

> (1) where the injury itself arose; (2) the location of the plaintiff's residence or principal place of business; (3) where any alleged services were provided; (4) where the plaintiff received or expected to receive the benefits associated with providing such services; (5) where any relevant business agreements were entered into and the laws binding such agreements; and (6) the location

> of the activities giving rise to the underlying dispute.

*Id.* at 707 (numbering added).  The *Humphrey* court concluded that the plaintiff had not alleged a domestic injury because all the factors pointed to China as the site of injury. *Id*. at 707–08.  Indeed, the "[p]laintiffs ha[d] not alleged that they possess offices, assets, or any other property in the United States."  *Id*. at 708.

Both the Second and Third Circuit tests differ from the now abrogated Seventh Circuit test, which imposed a bright-line "injury-felt" test for intangible property that looked only to where the plaintiff felt the effects of the alleged injury. *See Armada (Sing.) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094–95 (7th Cir. 2018), *abrogated by Yegiazaryan*, 143 S. Ct. 1900.  The *Armada* court distinguished *Bascuñán*, noting that it faced a question involving intangible property rather than tangible property.  *Id.* at 1094.  The court held that the plaintiff "experiences or sustains injuries to its intangible property at its residence."  *Id*.  There, a Singaporean carrier that contracted with an Indian mining company whose largest shareholder was an Illinois corporation, filed suit under RICO alleging that the Illinois owner had divested the Indian company's assets to thwart their attempt to recover damages for breached contracts.  *See id*. at 1091.  The court concluded that, because the plaintiff was a foreign corporation, any injury to its intangible property, even if it were a judgment issued by a U.S. district court, was not a domestic injury.  *Id*. at 1094–95.  The Supreme Court rejected the "injury-felt" residency test in *Yegiazaryan*. 143 S. Ct. at 1909.

C

We, along with our sister circuits, previously analyzed the domestic injury inquiry by considering whether the property involved was tangible or intangible.  *See, e.g.*, *Armada*, 885 F.3d at 1094–95; *Bascuñán*, 874 F.3d at 820–21. The Supreme Court's opinion in *Yegiazaryan*, however, does not make such a distinction.  We therefore read its holding and definition of "domestic injury" to apply uniformly.

We now consider whether the circumstances of GMC's alleged injury show it arose in the United States.  We find that GMC suffered a domestic injury.

1

But first, we must determine whether GMC showed (1) a cognizable injury to property (2) "by reason of" a RICO violation.  *See Just Film, Inc.*, 847 F.3d at 1118–19.  First, the injury analysis.  Here, a plaintiff must demonstrate (1) harm to a specific property interest cognizable under state law, *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc) (per curiam), and (2) that the injury resulted in "concrete financial loss," *Canyon County*, 519 F.3d at 975 (citation omitted).

The crux of GMC's claim is that it received fraudulently non-conforming supplements from Esmond Natural.  Thus, the claim is for an injury to a cognizable property interest—the supplements.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) ("[T]he word 'property' . . . comprehends anything of material value owned or possessed.").  Esmond Natural, however, contends that GMC only alleged financial harm.  It points mostly to a single interrogatory asking GMC to "Describe the alleged injury to GMC's business or

property as a result of ESMOND NATURAL's pattern of racketeering activity," and GMC's response that "GMC alleges that the value of the inferior supplements that it received from Esmond was less that the value of the supplements that it ordered." But this interrogatory response is not determinative because the interrogatory asked GMC to *describe* the injury, not state the object of its injury. GMC's interrogatory response directly addresses the tangible property interest that cause GMC's financial losses—the inferior supplements. GMC asserts that Esmond Natural delivered nonconforming goods to GMC in California, and that Esmond Natural's fraud injured GMC's tangible property there.

A civil RICO injury also requires "proof of concrete financial loss," not "mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l*, *LP*, 300 F.3d 1083, 1087 (9th Cir. 2002). Our caselaw has established a low threshold for plaintiffs to show a concrete RICO injury. We have found that allegations of "a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes" and loss of a future employment opportunity constitute RICO injuries to "property." *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 n.4 (9th Cir. 2002); *see also Diaz*, 420 F.3d at 900. Courts have also found that the overpayment of money is a tangible injury. *See Canyon County*, 519 F.3d at 976. Looking to the same interrogatory response that Esmond Natural highlights, GMC has alleged concrete financial loss. As such, GMC meets the cognizable injury to property requirement.

GMC also meets the "by reason of" requirement for RICO standing. *See Just Film, Inc.*, 847 F.3d at 1118–19. An injury is "by reason of" a RICO violation if "a RICO

predicate offense 'not only was a "but for" cause of [the] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). Under the but-for standard, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [his or her] alleged injury would not have occurred." *Richards v. County of San Bernardino*, 39 F.4th 562, 572 (9th Cir. 2022) (citation omitted). And when a court evaluates proximate causation, "the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

GMC satisfies this requirement. It contends that Esmond Natural fraudulently manufactured and delivered nonconforming supplements which caused its financial harm. Put differently, GMC contends that but for Esmond Natural's fraudulent filling and distribution of the supplements, GMC would not have sustained financial harm, thus Esmond Natural's U.S. based conduct proximately led to its injury. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1260 (9th Cir. 2019) (finding allegations that someone in the chain of causation relied on defendants' alleged misrepresentations and omissions sufficient to allege proximate cause). In so doing, GMC proffers evidence of supplement orders that support its claim of disparities between what was ordered and what was received. GMC has met the "injury to property" and "by reason of" requirements for RICO standing.

2

Having determined that this case involves harm to a cognizable property interest, we lastly conclude that GMC's asserted injury is domestic.  The circumstances of GMC's alleged injury indicate that it arose in the United States.  *See Yegiazaryan*, 143 S. Ct. at 1909.

GMC contends its injury is domestic because Esmond Natural's fraud injured GMC's property in California.  It asserts that Esmond Natural delivered its nonconforming supplements to Los Angeles, evidenced by proffered purchase orders specifying "F.O.B., Los Angeles."[2]  We agree.  Based on the applicable law governing the F.O.B. clause, GMC's property injury arose in the United States.

"F.O.B.," or "free on board," generally presumes that the property passes from seller to buyer at the point specified. *See Free on Board*, BLACK'S LAW DICTIONARY (11th ed. 2019); CAL. COM. CODE § 2319(1)(a).  Esmond Natural counters that the F.O.B. term was used solely as a basis to determine the base cost to assess a shipping price and to lower freight costs.  Esmond Natural also asserts that GMC never owned the supplements in the United States because they were placed in shipping containers and shipped directly to China.

This argument, however, fails because "when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000); *see Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59

---

[2]  Esmond Natural disputes the evidence that the contracts contained the F.O.B., Los Angeles clause.  But the evidence creates at least a genuine dispute about the presence of the clause.  That is sufficient at this stage.

Cal. 4th 277, 288 (2014) ("The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.") (cleaned up). Under California law, "[u]nless otherwise explicitly agreed[,] title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . ." CAL. COM. CODE § 2401(2). Additionally, as courts have noted, "[w]hen a delivery term is F.O.B., the 'goods are delivered at a designated location, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer.'" *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 530 F. Supp. 3d 988, 1013 (S.D. Cal. 2021) (citation omitted), *aff'd*, No. 2021-1856, 2022 WL 1436146 (Fed. Cir. May 6, 2022).

Here the supplements were delivered to a transportation depot in Los Angeles before being shipped to China. The purchase orders between GMC and Esmond were "F.O.B., Los Angeles U.S.A." There is no other evidence of a contrary agreement between the parties other than Esmond Natural's legally irrelevant statement that it understood the clause to assess shipping price. We thus conclude that GMC legally took all deliveries in California and, because legal title and risk of loss passed to GMC in Los Angeles, it owned the injured property in the United States.

Even though the supplements were ultimately shipped to China, this is not dispositive. Such a finding would be contrary to the Supreme Court's abrogation of the Seventh Circuit's residency requirement test set forth in *Armada*. *See Yegiazaryan*, 143 S. Ct. at 1909. That GMC owned its injured property in the United States establishes that its injury was domestic.

Esmond Natural counters that finding the F.O.B. clause determinative of domestic property ownership would amount to an unprecedented expansion of RICO.  It relies on *Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, for the proposition that in the personal jurisdiction context, "when the goods are shipped outside of the forum, an F.O.B. delivery term may not be a sufficient indicator of the defendant's purposeful availment of the forum's laws." 593 F.3d 1249, 1273 (11th Cir. 2010).  Moreover, according to Esmond Natural, delivery terms (negotiated outside the forum state) specifying reasonable shipping points along an international route seem to be the sort of random and attenuated contacts with which the Due Process Clause is concerned.  *See id*. at 1268.

But *Diamond Crystal Brands* is not on point.  That case concerned personal jurisdiction in a removed diversity action in which the Eleventh Circuit held that the Georgia state long-arm statute required the nonresident defendant to prove that it transacted business in the state.  *Id*. at 1264. Here, we are not dealing with a question of minimum contacts.  There is no question that Esmond Natural, a California company, has availed itself of U.S. law.  For our analysis, the relevant fact is that it is undisputed that GMC transacted business in California by ordering the allegedly nonconforming supplements.  This supports our holding that GMC has suffered a domestic injury because the circumstances of its alleged harm concern domestically purchased goods.

Other factors also indicate that GMC's injury was domestic.  GMC alleges that Esmond Natural sourced the materials from and made the nonconforming supplements in the United States before delivering them and before GMC took title of them there.  And GMC claims that their injury

stems from a pattern of unlawful domestic racketeering activity—mail and wire fraud from knowingly producing and delivering nonconforming supplements in the United States.  Therefore, the alleged racketeering activity "largely occurred in or was directed from and targeted at" the United States. *Yegiazaryan*, 143 S. Ct. at 1912.  This along with the factors outlined above supports our conclusion that GMC asserts a domestic injury.

V

Under the Supreme Court's decision in *Yegiazaryan*, the district court applied the wrong legal standard in analyzing whether GMC had suffered a domestic injury under RICO.  We conclude that the circumstances of GMCs alleged injury indicate that it arose in the United States.  We therefore reverse and remand to the district court for proceedings consistent with this opinion.

**REVERSED AND REMANDED in part.**