**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1309

PERCIVAL PARTNERS LIMITED; REIPLO HOLDINGS, LLC,

Plaintiffs - Appellants,

v.

PAA KWESI NDUOM; INTERNATIONAL BUSINESS SOLUTIONS, LLC; GROUPE NDUOM; YVONNE NDUOM; NANA KWEKU NDUOM; EDJAH NDUOM; NANA ABA NDUOM; JOHN DOES 1-10; GROUPE NDUOM USA, LLC,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Rossie David Alston, Jr., District Judge.  (1:22-cv-00016-RDA-WEF)

Argued:  December 7, 2023                    Decided:  April 30, 2024

Before THACKER, HARRIS, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Harris wrote the majority opinion, in which Judge Thacker and Judge Richardson joined.

**ARGUED:**  Shomik Ghosh, SPIRO HARRISON & NELSON, New York, New York, for Appellants.   Robert Maxwell Andalman, A&G LAW LLC, Chicago, Illinois, for Appellees. **ON BRIEF:**  Roman Lifson, David B. Lacy, CHRISTIAN & BARTON, LLP, Richmond, Virginia; Joseph M. Esposito, SPIRO HARRISON & NELSON, New York, New York, for Appellants.  Elizabeth L. Van Pelt, LIBBEY VAN PELT LAW, PLLC, Arlington, Virginia, for Appellees.

PAMELA HARRIS, Circuit Judge:

This case began when investors in Ghana placed their funds with a Ghanaian private investment firm, hoping to recoup a profit. Instead, a Ghanaian family domiciled in Virginia allegedly used a web of shell companies across Ghana and the United States to illicitly transfer those funds out of the investors' reach.

The investors sued in federal district court in Virginia, invoking a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO") that authorizes a private cause of action for "[a]ny person injured in his business or property" by a violation of RICO's substantive prohibitions. 18 U.S.C. § 1964(c). That cause of action, however, is available only to remedy "domestic injury," and does not extend to injuries suffered outside the United States. *See RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016). We agree with the district court that the plaintiffs have not alleged the necessary domestic injury and therefore affirm the dismissal of the plaintiffs' action.

## I.

### A.

The complaint in this case alleges a sprawling scheme to defraud Ghanaian investors of millions of dollars. The individual defendants are members of the Nduom family, a Ghanaian family domiciled in the United States. The Nduoms owned and operated Gold Coast, a now-defunct Ghanaian investment and wealth-management company in which the plaintiffs invested their funds. Also named as a defendant is International Business Solutions ("IBS"), a Virginia company owned and directed by some of the Nduoms.

2

Members of the Nduom family, in various permutations, are also alleged to have owned and operated additional shell companies across Ghana and the United States.

Though the cast of characters is complicated, the basics of the alleged fraud are not. Gold Coast, in Ghana, would solicit funds from investors, also in Ghana, and promise to distribute them as microfinance loans to small family businesses and individuals in Africa. In theory, the loans would stimulate African economies while also earning interest for the investors. In practice, Gold Coast simply took the money. The funds then were wired to IBS, the Nduom family's Virginia-based company, and from there, distributed to members of the Nduom family and other Nduom-owned shell companies. Sometimes the money went directly from Gold Coast to IBS; sometimes it passed through yet another Nduom-owned company in Ghana. But either way, the plaintiffs allege, this "one-way outflow of funds" left Gold Coast insolvent and unable to pay back its investors the millions of dollars they were owed. J.A. 9.

The Ghanaian authorities took notice. In 2019, the Bank of Ghana revoked a banking license from Gold Coast's sibling company after finding that it faced "a severe liquidity crisis" – brought on, in large part, by irregular money transfers to other companies owned by the Nduoms, including Gold Coast and IBS, without proper documentation. J.A. 121-23. And after finding that Gold Coast had placed 99.41 percent of its funds with "an unregulated related entity" – another Nduom family corporation – and was failing to repay its investors, Ghana's Securities and Exchange Commission revoked Gold Coast's license. J.A. 149.

3

The plaintiffs are Ghanaian victims of this alleged scheme or their assignees. Percival Partners Limited, a Ghanaian investment firm, invested (and lost) millions of dollars with Gold Coast. REIPLO Holdings, LLC is the assignee of the legal claim of an unnamed Ghanaian-American investor who, like Percival Partners, lost her investment with Gold Coast to the allegedly fraudulent transfers.

**B.**

After trying and failing to recoup their investments, the plaintiffs brought this federal-court action in the Eastern District of Virginia. Five of their six claims arose under Virginia state law. The sixth was the civil RICO claim directly at issue here, premised on four predicate RICO crimes: (1) transporting stolen property in violation of 18 U.S.C. § 2314; (2) possessing stolen property in violation of 18 U.S.C. § 2315; (3) money laundering in violation of 18 U.S.C. § 1956; and (4) engaging in monetary transactions with property derived from unlawful activity in violation of 18 U.S.C. § 1957.

The district court granted the defendants' motion to dismiss the action against them. *Percival Partners Ltd. v. Nduom*, No. 1:22-cv-16, 2023 WL 2088421 (E.D. Va. Feb. 17, 2023). The district court began with the civil RICO claim, explaining that under Supreme Court precedent, a "private RICO plaintiff must 'allege and prove a domestic injury to its business or property.'" *Id.* at *3 (quoting *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016)). Absent that requirement, the court continued, people injured overseas could freely bring civil RICO claims in United States courts, potentially causing "international friction" when they were permitted to "bypass" the "less generous remedies" available in the countries where the injuries occurred. *Id.* (quoting *RJR Nabisco*, 579 U.S. at 347-48).

4

The court considered two primary factors in concluding that the plaintiffs' alleged injuries were suffered outside the United States: the residency of the plaintiffs (Ghana)[1] and the location of the money when it was misappropriated (Ghana again). *Id.* at *3-4. The court rejected the plaintiffs' alternative analysis, which would have focused on the location of the stolen money at the time of the defendants' racketeering conduct, at least some of which occurred in the United States. Instead, the court kept its focus on where the money was "originally held." *Id.* at *4. Because the case involved "losses alleged to have occurred in Ghana stemming from investments made in Ghana," the court concluded, the plaintiffs were alleging a foreign injury that cannot be remedied under RICO's private right of action. *Id.* at *3. Accordingly, it dismissed the plaintiffs' RICO claim for failure to state a claim. *Id.* at *6; *see* Fed. R. Civ. P. 12(b)(6).

The court then turned to the plaintiffs' state law claims, which it dismissed without prejudice for lack of subject-matter jurisdiction. 2023 WL 2088421, at *6 & n.7; *see* Fed. R. Civ. P. 12(b)(1). There was no diversity jurisdiction over the claims, the court determined, because the plaintiffs had inadequately alleged their citizenship. 2023 WL 2088421, at *5. And because it had dismissed the only federal claim in the case, the court also declined to exercise supplemental jurisdiction over the state claims, pointing to the

---

[1] The first plaintiff, Percival Partners, is headquartered in Ghana. The second, REIPLO, stands in the shoes of an unnamed Ghanaian-American investor. But as the district court explained, the plaintiffs have not alleged that this unnamed investor "lives or holds her assets in the United States" rather than Ghana, and regardless, that assignor, like Percival Partners, invested funds in Ghana with Gold Coast, a Ghanaian entity. 2023 WL 2088421, at *4.

Supreme Court's instruction that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors [under 28 U.S.C. § 1367] will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at *6 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

The plaintiffs timely appealed the district court's judgment.

## II.

On appeal, the parties primarily dispute whether the plaintiffs have alleged a domestic injury that may be remedied by way of a civil RICO suit. The defendants, naturally, believe that the district court got it right: This case, brought by Ghanaian plaintiffs who made their investments in Ghana, alleges a foreign injury beyond civil RICO's reach.[2] The plaintiffs, on the other hand, believe the district court erred by centering their residence and the place where the lost property was originally held. On appeal as before the district court, they maintain that what matters is the location of the lost property at the time of the defendants' unlawful conduct. And because some of the unlawful conduct occurred only after the Nduoms had transferred the stolen money to the United States, they argue, that conduct must have produced a domestic injury.

We review a district court's dismissal for failure to state a claim de novo, *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010), and we agree with

---

[2] The defendants also pile a number of alternative grounds for affirmance on top of the district court's domestic injury ruling. Because we agree with the district court that no domestic injury is alleged, we need not address these alternative grounds.

the district court:  The injury the plaintiffs have alleged is foreign, not domestic, and therefore cannot sustain a civil RICO suit.

## A.

The Racketeer Influenced and Corrupt Organizations Act, or RICO, codified at 18 U.S.C. §§ 1961-1968, multiplies criminal punishment and civil liability for certain criminal acts performed as part of an ongoing criminal organization or enterprise.  *RJR Nabisco*, 579 U.S. at 329.  Rather than criminalize acts from scratch, RICO operates by incorporation:  It "encompass[es] dozens of state and federal offenses, known in RICO parlance as predicates."  *Id.* at 329-30.  In concert, a "pattern" of RICO predicates can trigger RICO liability:  criminal liability under § 1963, civil liability as enforced by the Attorney General under § 1964(b), or – at issue here – civil liability under § 1964(c), through a private right of action for "[a]ny person injured in his business or property" by a RICO violation.  *Id.* at 331.  Regardless of the proceeding's character, RICO's consequences are "drastic," and in a private civil action a defendant is liable for "treble damages, costs, and attorney's fees."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233 (1989).

In *RJR Nabisco*, the Supreme Court addressed whether RICO's "drastic" measures can reach foreign conduct or remedy foreign injuries.  Importantly, the Court viewed those as two separate questions, applying the presumption against extraterritorial application to each in turn.  *See RJR Nabisco*, 579 U.S. at 335.  RICO's substantive prohibitions, the Court held, may sometimes be applied to foreign racketeering *conduct*:  RICO's criminal

7

prohibitions overcome the presumption against extraterritoriality "to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *Id.* at 339.

The Court reached a different conclusion with respect to RICO's private right of action. What "*conduct* falls within [RICO's] purview," the Court explained, is distinct from the question of who may *enforce* RICO's prohibitions. *Id.* at 346. Allowing private plaintiffs – unconstrained by prosecutorial discretion – to recover treble damages for foreign injuries, the Court reasoned, would pose a special risk of international discord, with people injured abroad circumventing other countries' laws and remedies in favor of a RICO suit. *Id.* at 347-48. The presumption against extraterritorial application of § 1964(c)'s private right of action, in other words, is not overcome simply because RICO's substantive prohibitions may govern conduct in foreign countries. *Id.* at 350. And because there is no other "clear indication" that Congress "intended to create a private right of action for injuries suffered outside of the United States," the presumption governs and a private RICO plaintiff "must allege and prove a *domestic* injury to its business or property." *Id.* at 349, 346.

Because the plaintiffs in *RJR Nabisco* had waived any claims for domestic injury, the Court did not have occasion to explain how to identify such an injury. *Id.* at 354. Instead, it cautioned that "whether a particular alleged injury is 'foreign' or 'domestic'" will "not always be self-evident," *id.*, and clarified just one point: The domestic injury requirement "does not mean that foreign plaintiffs may not sue under RICO," *id.* at 353 n.12.

8

The Supreme Court recently provided more guidance in *Yegiazaryan v. Smagin*, 599 U.S. 533 (2023). That case involved a Russian plaintiff's civil RICO suit against a California resident who allegedly engaged in criminal activity, mostly in California, to prevent the plaintiff from collecting on a California judgment against the defendant. *Id.* at 536-37. The district court applied the "residency-based test" that had been adopted by some courts after *RJR Nabisco*, under which a foreign plaintiff could rarely, if ever, show a domestic injury, and dismissed the action. *Id.* at 540. The Ninth Circuit reversed. Taking the more "context-specific" approach adopted by several other courts of appeals, it concluded that under all the circumstances surrounding the injury, the plaintiff had indeed alleged a domestic injury. *Id.*

The Supreme Court agreed, holding that a "context-specific inquiry is most consistent" with *RJR Nabisco* and rejecting any "bright-line rule" that would make the plaintiff's residence determinative. *Id.* at 540-41, 544.[3] The inquiry will "turn[] largely on the particular facts alleged in a complaint," and require courts to consider "the circumstances surrounding [an] alleged injury to assess whether it arose in the United States." *Id.* at 543-44. And in that case, all the circumstances save the plaintiff's Russian residence pointed to the United States: The criminal conduct occurred mostly in California,

---

[3] The Supreme Court's recent decision in *Yegiazaryan* came only after the district court ruling in this case and after briefing before this court. Although the parties debate whether the district court applied the kind of bright-line residency rule subsequently rejected by *Yegiazaryan*, we need not settle that dispute. It is enough that we now review the district court's ruling de novo, testing for ourselves the complaint's allegations against the standard announced in *Yegiazaryan*.

9

*id.* at 545-46, and "the injurious effects" of that conduct also "largely manifested in California" because, crucially, "[t]he rights that the California judgment provides to [the plaintiff]" – including "the right to seize assets in California" – "exist only in California," *id.* at 546; *see also Global Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1272 (9th Cir. 2023) (the judgment at issue in *Yegiazaryan* "was not property in Russia because [it] granted [the plaintiff] no rights in Russia"). Where the conduct was domestic, its injurious effects were domestic, and the only cognizable property interest was domestic, the fact that the plaintiff lived and "in some sense . . . felt his economic injury" in Russia could not overcome the essentially domestic nature of the injury. *Yegiazaryan*, 599 U.S. at 545.

**B.**

Here, the "circumstances surrounding the alleged injury," *Yegiazaryan*, 599 U.S. at 543, convince us that the plaintiffs suffered no domestic injury within civil RICO's reach. To the contrary: This case has Ghana "written all over it." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 286 (2010) (Stevens, J., concurring). As alleged by the plaintiffs, the victims are Ghanaian investors. They placed their funds with Gold Coast, a Ghanaian firm. They expected their money would be distributed as microloans within the African continent and then returned to them in Ghana. Instead, the Ghanaian funds were stolen from the Ghanaian plaintiffs in Ghana, when the Nduoms took the money from their Gold Coast accounts. Across all these dimensions, what is alleged is a distinctly foreign injury. *See Bascuñán v. Elsaca*, 874 F.3d 806, 818 (2d Cir. 2017) (finding no domestic injury under context-specific approach in similar circumstances).

10

But as the plaintiffs argue, this case does have one domestic element, as well: the transfer of the foreign funds to IBS, the Nduom-owned company in Virginia, and sometimes from IBS to other United States shell companies used to launder the funds. According to the plaintiffs, that is where we should focus our attention. And because their property – the stolen money – was in the United States when the defendants committed at least some of these racketeering acts, the plaintiffs say, those acts must have caused a domestic injury.

It is true that the RICO case law, *Yegiazaryan* prominently included, instructs that the place of racketeering conduct may be relevant to whether an injury is domestic or foreign. Civil RICO's "focus is on the injury, not in isolation, but as the product of racketeering activity." *Yegiazaryan*, 599 U.S. at 545; *see also Walters v. McMahen*, 684 F.3d 435, 440 (4th Cir. 2012) (RICO "injuries must flow from the commission of the predicate acts") (internal quotation marks omitted). And in finding a domestic injury in *Yegiazaryan*, the Court relied in part on the fact that "much of the alleged racketeering activity that caused the injury occurred in the United States." 599 U.S. at 545; *see also id.* at 543-44 (identifying as the circumstances relevant to the inquiry "[i]n this suit" the "nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity").

But at the same time, it cannot be the case that a RICO injury necessarily arises wherever RICO conduct occurs. The whole point of *RJR Nabisco*, as described above, was to separate out conduct from injury when it comes to extraterritoriality. *See* 579 U.S. at 335, 346. To determine whether racketeering *conduct* is subject to RICO's criminal

11

prohibitions, *RJR Nabisco* asks where the conduct occurred:  If it occurred in the United States, RICO applies; if it occurred overseas, RICO may or may not apply, depending on the extraterritoriality of the relevant predicates.  But either way, that racketeering activity gives rise to a private cause of action under *RJR Nabisco* only if it also inflicted a domestic *injury*, a distinct and independent inquiry.  *Id.* at 346.  Allowing the location of the racketeering conduct to dictate whether an injury is domestic would conflate the two inquiries that *RJR Nabisco* took pains to keep apart.  *See Bascuñán*, 874 F.3d at 819 (rejecting position like the plaintiffs' because "[t]o hold otherwise would subvert the intended effect of the 'domestic injury' requirement articulated by the *RJR Nabisco* Court").

Perhaps recognizing that a rule centered on the location of racketeering conduct cannot be squared with *RJR Nabisco*, the plaintiffs emphasize that the allegations here put both some of the racketeering activity *and* the stolen funds together in the United States.  Instead of a conduct-based rule, the plaintiffs advance a conduct-plus-property rule:  a RICO injury arises in the place where a plaintiff's property is located at the time of the racketeering conduct.  And because the Nduom family allegedly laundered the stolen funds through bank accounts and shell companies in the United States, the plaintiffs argue, some part of their injury necessarily qualifies as "domestic."

This attempted refinement of a conduct-based rule is unavailing.  As a practical matter, racketeering conduct and the property it involves will so often be in the same place that a conduct-plus-property rule will mostly turn out to be just a conduct rule, inconsistent with *RJR Nabisco*.  *See Bascuñán*, 874 F.3d at 819 (if a defendant's use of domestic bank

12

accounts "could transform an otherwise foreign injury into a domestic one," the result "might well effectively eliminate the effect of the domestic injury requirement in a large number of cases"). And indeed, *RJR Nabisco* itself involved alleged predicate acts – including money laundering, as here – that necessarily occurred when the property in question was in the United States. *See* 579 U.S. at 361 (Ginsburg, J., dissenting) (pointing out that the predicates included "receiv[ing] in the United States funds known to [the defendant] to have been generated by illegal narcotics trafficking and terrorist activity"). If the plaintiffs' conduct-plus-property rule were right, then *RJR Nabisco* came out wrong. We recognize, of course, that a waiver in *RJR Nabisco* made it unnecessary for the Court to hold that the alleged injury there was foreign. But it is surely notable that both parties and all the Justices seem to have assumed as much. *See Bascuñán*, 874 F.3d at 818.

Finally, the plaintiffs' proposed rule draws too bright a line. The Supreme Court in *Yegiazaryan* made clear that the domestic injury inquiry is fact- and context-specific, requiring consideration of all relevant circumstances. 599 U.S. at 543-44; *see also Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 702 (3d Cir. 2018) (domestic injury inquiry "must be undertaken in the context of the specific injuries alleged in a given case rather than relying on a one-size-fits-all approach or bright-line rule"). That is why *Yegiazaryan* rejected the bright-line rule on offer in that case, under which a plaintiff's residence was determinative. 599 U.S. at 544-45. The plaintiffs here offer a different bright-line rule – now it is the location of the property at the time of racketeering conduct that controls – but it is no more faithful to the Supreme Court's instruction that "no set of factors can capture the relevant considerations for all cases." *Id.* at 545. As the Court

13

understood, a "bright-line rule" like the plaintiffs' "would no doubt be easier to apply." *Id.* But the statute demands a more "nuanced approach." *Id.*

Applying *Yegiazaryan* and its contextual approach, we do not think the racketeering alleged to have occurred in the United States – primarily, the use of United States bank accounts and shell companies to facilitate the theft of foreign funds – is enough to turn what otherwise would be a foreign injury into a domestic one. We appreciate that *Yegiazaryan* relied in part on the existence of domestic racketeering conduct to find a domestic injury in that case. But in *Yegiazaryan*, that domestic conduct was accompanied by inherently domestic property – the rights under a California judgment – and resulting domestic effects. Here, the plaintiffs can point only to conduct.

Moreover, like the Second Circuit, we think it is important that the funds at issue originally were placed with an investment firm in Ghana and made their way to the United States only by virtue of the defendants' unilateral and unlawful conduct. *See Bascuñán*, 874 F.3d at 819. Because the investors had no reason to believe the money they invested in Ghana would migrate to the United States, they also had no reason to expect that United States law would protect their funds. Under those circumstances, allowing recovery of treble damages under civil RICO might well be viewed as "unjustifiably permit[ting] foreign citizens to bypass their own nation's less generous remedial schemes," causing the kind of international friction *RJR Nabisco* warned against. *Id.* (quoting *RJR Nabisco*, 579 U.S. at 347) (cleaned up). By contrast, if property is located in the United States when it is stolen or harmed – as was the case in *Yegiazaryan* – then its owners will reasonably "expect that our laws will protect them in the event of damage to that property." *Id.* at 821.

14

And under those circumstances, allowing a cause of action under RICO will simply "protect[] the interest each sovereign has in regulating the private property situated in its own territory," reducing the "possibility of international discord." *Id.* at 821-22.

In sum, this case involves Ghanaian victims who entrusted Ghanaian funds to a Ghanaian entity, with no expectation that their money would end up in the United States. The defendants' unilateral use of American entities to complete their scheme does not domesticate an otherwise foreign injury. Because the plaintiffs have not alleged the requisite "domestic injury," the district court correctly dismissed their civil RICO claim.[4]

And because the only federal claim in the case was properly dismissed, we also affirm the district court's dismissal of the plaintiffs' state law claims. On that front, the plaintiffs argue only that because their civil RICO claim should have survived, the district court also should have exercised supplemental jurisdiction over their state law claims. Because we disagree with the premise – the survival of the civil RICO action – we also see no abuse of discretion in the district court's decision not to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *PEM Entities LLC v. Cnty. of Franklin*, 57 F.4th 178, 184 (4th Cir. 2023).

---

[4] The plaintiffs also raise a procedural objection, arguing that the fact-specific nature of the domestic injury inquiry makes it inappropriate for resolution on a pre-discovery motion to dismiss. But there is no bar to review of a fact-specific claim at the pleading stage; that posture means only that we must – as we do here – take as true all well-pleaded allegations in the complaint and draw all reasonable factual inferences from them in the plaintiff's favor. *See Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017). Indeed, the Supreme Court resolved the domestic injury question at the pleadings stage in *Yegiazaryan*, explaining that the analysis will turn on "the particular facts *alleged in a complaint*." 599 U.S. at 543 (emphasis added). We follow that approach here.

15

## III.

For the above reasons, the judgment of the district court is affirmed.

*AFFIRMED*